**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-2371

_____

JEFFREY THOMPSON,
Appellant

v.

SHIRLEY MOORE SMEAL, Acting Secretary of Corrections;
ANDREA PRIORI MEINTEL, Director Bureau of Treatment Services;
REVEREND ULLI KLEMM, Administrator for Religion and Volunteer Services

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:11-cv-00340)
District Judge:  Honorable William J. Nealon

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2013
Before:  SLOVITER, GREENAWAY, JR. and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  February 1, 2013)

_____

OPINION

_____

PER CURIAM

Jeffrey Thompson, an inmate currently incarcerated at SCI Camp Hill in Camp

Hill, Pennsylvania and proceeding pro se, appeals from an order of the United States

District Court for the Middle District of Pennsylvania granting Appellees' motion for

summary judgment. For the following reasons, we will vacate the District Court's order and remand for further proceedings.

I.

Because we write primarily for the parties, we need only recite the facts necessary for our discussion. Until about 2005, SCI Camp Hill provided Christian holiday meals for inmates, but these were discontinued in 2006. However, the Pennsylvania Department of Corrections ("DOC") authorizes religious meals for several other groups of inmates, including Muslim, Jewish, and Native American inmates. In September 2009, Thompson submitted an Inmate Religious Accommodation Request form, asking that Christian inmates be allowed to congregate for special feasts at Christmas and Easter. In his later grievances, he primarily requested an opportunity to gather with other Christian inmates for prayer before and after the meals. The Religious Accommodation Review Committee ("RARC") recommended that Thompson's request be denied because feasting is not mandated by Christian scripture. Deputy Secretary Smeal concurred with the recommendation and denied Thompson's request.

On February 22, 2011, after exhausting the administrative process, Thompson filed his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging a violation of his right to free exercise of religion under the First Amendment, his right to equal protection under the Fourteenth Amendment, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 et seq. Thompson sought injunctive relief providing these feasts as well as reimbursement for the costs of

his suit. Following discovery, Thompson and Appellees filed motions for summary judgment. On February 3, 2012, a Magistrate Judge recommended that Appellees' motion for summary judgment be granted and Thompson's motion be denied. Thompson did not object, and on March 1, 2012, the District Court adopted the recommendation, granted Appellees' motion, and dismissed the complaint.

In March 2012, Thompson filed a motion to reopen the case, alleging that he had never received a copy of the Magistrate Judge's Report and Recommendation ("R&R"). The District Court granted his motion, and Thompson filed objections to the R&R. On April 19, 2012, the District Court overruled Thompson's objections, granted Appellees' motion for summary judgment, denied Thompson's motion for summary judgment, and dismissed Thompson's complaint. Thompson timely filed this appeal.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over the District Court's order granting summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

3

III.

On appeal, Thompson asserts that the District Court ignored three facts central to his claims. He further argues that the District Court misapplied the law governing his Equal Protection and RLUIPA claims. Finally, Thompson alleges that while Appellees mention penological interest as a reason for denying his request, they did not explain which penological interests justified the denial.

IV.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citation omitted). However, an inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in Turner v. Safley, 482 U.S. 78 (1987). These factors require courts to consider: (1) "whether the regulation bears a 'valid rational connection' to a legitimate and neutral government objective;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives." Id. at 89-90; see also Fraise v. Terhune, 283 F.3d 506, 513-14 (3d Cir. 2002) (citations omitted).

4

With regard to Thompson's Equal Protection claim, "Turner is equally applicable [], and the appropriate analysis for this claim is the same as that for [his] Free Exercise claim." DeHart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). Generally, prison officials cannot discriminate against inmates of different religions. Cruz v. Beto, 405 U.S. 319 (1972) (per curiam). However, an inmate "cannot obtain relief if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is 'reasonably related to legitimate penological interests.'" DeHart, 227 F.3d at 61.

Instead of focusing on the Turner analysis, Appellees moved for, and the District Court granted, summary judgment primarily on the basis that Christmas and Easter "feasts" are not a required part of Christian doctrine. However, we have previously noted that "[i]t is inappropriate for a reviewing court to attempt to assess the truth or falsity of an announced article of faith. Judges are not oracles of theological verity, and the Founders did not intend for them to be declarants of religious orthodoxy." Africa v. Pennsylvania, 662 F.2d 1025, 1030 (3d Cir. 1981); see also Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 716 (1981) ("Courts are not arbiters of scriptural interpretation.").

Our analysis reveals that the record is not properly developed on any of the Turner factors. Appellees have offered nothing in support of the first Turner factor; i.e., "whether the governmental objective underlying the regulations at issue is legitimate and neutral" and whether "the regulations are rationally related to that objective." Thornburgh v. Abbott, 490 U.S. 401, 414 (1989). Appellees assert that allowing inmates

to separately congregate for holiday meals and prayer would have a significant impact on prison resources because of the number of inmates in Pennsylvania's correctional institutions. However, that conclusion is not supported by the materials in the record, and it is unclear what penological interests are served by allowing some religious meals and not others.

As mentioned above, the second Turner factor requires courts to determine whether inmates have alternative ways of exercising their rights. Turner, 482 U.S. at 90. This analysis does not focus on whether the prisoner has alternative means of engaging in the particular practice; instead, it focuses on whether he has alternative means of observing his religion generally. See O'Lone, 482 U.S. at 351-52. Appellees presented ample evidence that Catholics and other Christians are afforded means of practicing their religion generally, especially with regard to the Christian seasons of Lent and Advent.

The third Turner factor requires courts to consider the deleterious impact accommodating the right would have on other inmates, prison officials, and the allocation of prison resources. Turner, 482 U.S. at 90. While it is possible to envision that allowing these meals would drain prison resources, there is nothing in the record to support this determination. The final Turner factor requires courts to consider whether alternatives exist to fully accommodate the right at de minimis cost. Id. Again, while Appellants have suggested that Thompson can pray alone over his meal during the general service, this does not encompass the communal meal and prayer he seeks. Furthermore, Thompson suggests that the meals do not actually have to take place on Easter or

Christmas so that the prison is not stressed on days where it may be understaffed. Again, however, the record is not clearly developed as to this factor. Therefore, given that the record was not properly developed with regard to the <u>Turner</u> factors, the District Court erroneously granted summary judgment to Appellees on Thompson's First Amendment and Equal Protection claims.

V.

The RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 721 (2005). The statute states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1)     is in furtherance of a compelling governmental interest; and
>
> (2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" refers to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "Although [the] RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . ., the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." <u>Cutter</u>, 544 U.S. at 725 n.13 (internal citation omitted).

"[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007). If an inmate satisfies his initial burden of showing that a practice substantially burdens his religious exercise, the burden then shifts to the government to show that the challenged policy "is in furtherance of a compelling governmental interest and is the least restrictive means" to enforce that interest. Id. at 283 (citing 42 U.S.C. § 2000cc-1(a)).

The District Court erred in finding that Thompson had not demonstrated that he had sincerely held religious beliefs regarding the communal meals and prayers for Christmas and Easter. As noted above, the District Court determined that feasts on Christmas and Easter are not required in the Christian faith; however, by making this determination, the District Court erroneously inquired into whether Thompson's belief was central to his religion. See Cutter, 544 U.S. at 726. The record contains evidence that Thompson's belief in the necessity of communal meals and prayers was sincere, and nothing indicates that Appellees question the sincerity of this belief. Accordingly, Appellees had the burden of showing that the denial was in furtherance of a compelling governmental interest and was the least restrictive means of furthering that interest. Washington, 497 F.3d at 283. As noted in our analysis of Thompson's First Amendment

8

and Equal Protection claims, the record contains little evidence to support any penological interests Appellees seek to advance. Again, given the undeveloped state of the record, the District Court should not have granted summary judgment to Appellees for Thompson's RLUIPA claim.

IV.

For the foregoing reasons, we will vacate the District Court's April 19, 2012 order granting Appellees' motion for summary judgment and remand the matter for further proceedings. Thompson has filed a motion to supplement the appellate record with documents from various religious officials supporting his request for communal meals and prayers at Christmas and Easter. Appellees object to his motion. "The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court." Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1165 (3d Cir. 1986). Accordingly, we deny Thompson's motion to supplement the appellate record, without prejudice to his ability to seek to supplement the record before the District Court on remand.